[Civ. No. 19264. First Dist., Div. One. June 29, 1961.]

RALPH EFFISIMO, Respondent, v. HENRY DOELGER
BUILDER, INC. (a Corporation), Appellant.

464

James P. Shovlin, Jr., and Herbert Chamberlin for Appellant.

Alfred E. Graziani and Wilkie C. Courter for Respondent.

HOYT, J. pro tem.*—This is an action by an employee of a subcontractor against the general contractor for personal injuries. Ralph Effisimo, the plaintiff and respondent, sued Henry Doelger Builder, Inc., hereafter called Doelger, the defendant and appellant, for a broken ankle. He recovered a $50,000 verdict in the trial court and from the judgment entered on this verdict Doelger appeals.

Appellant contends that there is no substantial evidence of any actionable negligence on the part of the appellant, and that the court committed prejudicial error by misdirecting the jury on the issue of negligence and in failing to give an instruction regarding the assumption of risk. Respondent raises the issue of res ipsa loquitur in support of the judgment.

Doelger was engaged in the construction of a large housing development in the Palisades Tract of the Westlake District of Daly City, San Mateo County. It was also the owner of the tract. Luther Warda was the lathing and plastering subcontractor. He had been subcontracting for Doelger for over 10 years. There were other subcontractors who worked on various phases of the work. In the mass production process

---

*Assigned by Chairman of Judicial Council.

of building these houses it was the practice for the various trades to follow each other through the houses. The first work to be done, of course, was the foundations; then came the carpenters, and after them the sheet metal workers, followed by the lathers and plasterers, and then other subcontractors. The lathers and plasterers came back a second time to put on the finish coat. The carpenters, who were employed by Doelger, needed an exterior scaffolding in order to accomplish the framing. Each carpenter foreman built his own scaffolds. He was supplied with a typical scaffold drawing furnished by the state Industrial Accident Commission. A rule of the Industrial Accident Commission provided, ''None but skilled workmen shall be employed in the erection of scaffolds, . . .'' There was testimony that apprentices ''could have worked on'' the erection of these scaffolds. The scaffolds were erected by the carpenters for, ''Their own use and the use of the subcontractors.'' The carpenters put planks on the scaffold necessary for their work. The sheet metal men put on planks ''necessary for them to do the work in the area where they are working.'' The planks were moved around as needed by the subcontractors or by Doelger. The platform or area of the scaffold on which workmen stood while using it consisted usually of two planks each 12 feet long, 2 inches thick, and 10 inches wide, resting on girders or ledgers. The ledgers were ''supposed to be'' 10 feet apart. There were some 10-foot planks. Doelger and Warda jointly maintained a stockpile of planks from which the planks were used. It was customary in the building trades in similar situations for the planks to be left loose, and each subcontractor moved the planks to conform to his particular needs.

Doelger's superintendent of construction testified concerning inspection of the scaffolds that it was visual only. The witness did ''go around the building to see the different views of them [the scaffolds].'' Luther Warda testified, ''when I buy these planks I inspect them myself because I know the law . . . I inspect all the planks, and then they go out on the field to be worked on and then from then on, we don't inspect them. In the case when hod carriers or the foremen on the job and they scaffold a job, when they see one plank is not fit to be used they don't use it, but we don't have an inspector to go out and inspect every job and see that the planks are in good solid shape. The hod carriers do that themselves. That is their duty, to make a scaffold strong

enough for the men to walk on so they don't break." If scaffold repairs were necessary sometimes one of Doelger's foremen would fix it, and sometimes one of Doelger's men who did a lot of repair work would take care of it. The only subcontractor's employees to fix scaffolds were those of Warda.

Respondent, a hod carrier, was told by Warda on February 8, 1956, to go ahead and prepare the scaffolds for the plasterers for the following day. Warda's crew had already put the first coat of plaster on these houses a week earlier. Respondent walked around on the ground to see if any planks were missing or there was other work to be done. At the third house two planks were missing from one side on the lower level. Respondent replaced them and otherwise concluded that the scaffold was safe for him to walk on. He went to the front of the house, up the stairs, onto the lower level of the scaffold, and thence around to the rear of the house. When he stepped onto the planks in the middle of the rear of the house, one of them fell to the ground with him. The plank fell a distance of from 4 to 6 feet. Respondent's ankle was broken. When he looked up at the scaffold he noted that the far end of the plank was still on the ledger and the other end was on the ground.

There are various versions of how the accident happened. We, of course, have to decide this case on those most favorable to respondent. Respondent testified that the scaffold did not break, the plank did not break, the only thing that happened was that the end of the plank "slipped right out from under me"; on the other hand, a witness named Bohling testified that immediately after the accident he looked at the scaffold and observed that the ledger was broken.

What duties were owed by appellant to respondent under these facts? ■ " 'An employee of a subcontractor occupies the relationship of an invitee to the main contractor. [Citing cases.] ■ "The applicable general principle is that the owner of the property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed peril. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care." [Citation.]' " (*Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 355 [1 Cal.Rptr. 840, 348 P.2d 200].)

■ "Moreover, the invitor, under the law, is required to protect his invitees not only from dangers created by him,

or of which he has actual knowledge, but from those dangers which by the use of reasonable care he should have had knowledge. [Citing cases.] And lack of actual notice is no defense if there was an opportunity to inspect, and such inspection would have revealed the dangerous situation. [Citing cases.]'' (*Florez* v. *Groom Development Co., supra,* at p. 357.)

The invitor's inspection must be done with reasonable care. In *Biondini* v. *Amship Corp.,* 81 Cal.App.2d 751 [185 P.2d 94], the employee of a subcontractor was injured when a scaffold broke. The particular scaffold was constructed by Amship and was referred to as the "short scaffold." The appellate court said: ''Carlson was employed by Amship to check upon the safety of all the scaffolds constructed by Amship. By his own testimony he failed to make a careful check of the safety of the short scaffold. He simply visually inspected it from the deck of the 'Aloith.' It was a question for the jury whether such cursory inspection satisfied the duty to exercise due care. . . .'' (P. 766.) Similarly, in the instant case it was a question for the jury whether the inspection of appellant satisfied the duty to exercise due care. ''Where there is uncertainty as to the existence of negligence the question is not one of law but of fact to be settled by the jury; and this is so whether the uncertainty arises from a conflict in the evidence or because fair-minded men will honestly draw different conclusions from undisputed facts. [Citation.]'' (*Johnson* v. *Nicholson,* 159 Cal.App.2d 395, 409 [324 P.2d 307].)

There were additional duties imposed upon appellant under the Labor Code. Section 6301 provides: ''As used in this part the terms described in the following sections shall have the meaning therein given them.'' Section 6304 reads as follows: '' 'Employer' . . . shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee.'' The appellant had management and control of the place of employment. Section 6400 of the Labor Code reads: ''Every employer shall furnish employment and a place of employment which are safe for the employees therein.'' Section 6401 provides in part: ''Every employer . . . shall adopt and use practices . . . methods, . . . and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees.''

▪ " ' "The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work, including the duty to warn such employees of a danger, either known to the general contractor, or discoverable by the exercise of ordinary care, or otherwise to protect the employees from injury, and to avoid exposing them to injury on account of dangerous conditions. He is bound to take reasonable measures to protect the employees of a subcontractor from injuries likely to arise from places of danger about the building. If he neglects this duty by failing to give adequate notice or warning of the existence of a place of danger, he may be found liable to an employee of a subcontractor for resulting injury." ' [Citation.] ▪ 'As a part of supervising the work, it is the duty of the general contractor to oversee conditions in the work of each subcontractor so far as they affect the safety of the employees of a subcontractor.' (*Revels* v. *Southern Calif. Edison Co.,* 113 Cal.App.2d 673, 678 [248 P.2d 986].)" (*Gonzales* v. *Robert Hiller Const. Co.,* 179 Cal.App.2d 522, 530-531 [3 Cal.Rptr. 832].)

▪ The jury could have characterized the inspections of the scaffold by appellant as superficial, and could reasonably have believed from the evidence that appellant did not exercise reasonable care in overseeing the conditions of the scaffold as they related to the safety of respondent. If the ledger was broken, the jury could have reasonably found that appellant's conduct did not measure up to the required standard. When it undertook to furnish a scaffold, it had a duty to furnish a reasonably safe one and had the duty to make reasonable inspections to see that it remained safe. (*Slovick* v. *James I. Barnes Constr. Co.,* 142 Cal.App.2d 618, 625-626 [298 P.2d 923].) This it failed to do and was therefore negligent.

Respondent argues that appellant used apprentices, but there is no evidence as to whether apprentices worked on the erection of this particular scaffold, and no evidence that anything done by an apprentice caused respondent to fall. Respondent also contends that the failure to nail the planks in place could be evidence that Doelger fell below the required standard of care. There is, however, no evidence that reasonable care requires that the planks be nailed down. The planks in certain positions had to be moved in order that the plasterers could do their work.

 If the dangerous situation was obvious then the invitor, Doelger, had no duty to warn respondent. (*Pauly* v. *King*, 44 Cal.2d 649, 653 [284 P.2d 487].) Appellant relies on the fact that the plank was not properly across the span. Joseph Eiwas, a fellow worker, testified that respondent told him that he had not put the plank up right, saying "I shorted it." This was denied by respondent. All of the witnesses (including respondent) who testified concerning the scaffold testified that nothing was broken, except the witness Bohling. Bohling testified, "The first thing I looked for was to see if the ledger was broken, and it was." Under these circumstances the jury could have found that the accident was caused by a broken ledger and that the defect was not obvious but would have been discovered on a reasonable inspection.

Appellant contends that where respondent is ordered to prepare the scaffold for his employer's use he cannot assume that the scaffold is safe, but again we have to take the testimony most favorable to respondent. The more favorable testimony by Luther Warda was to the effect that respondent was sent ahead to put planks on ledgers and that he had nothing to do where the scaffold was completely planked.

 Appellant complains that the following instruction requested by appellant was not given: "Under the law, the defendant Henry Doelger Builder cannot be liable for the accident involved in this case, unless defendant Henry Doelger Builder owned [*sic*] the plaintiff the duty to protect him from the injury of which he complains, and defendant Henry Doelger Builder breached that duty proximately causing such injury. If you find from the evidence that defendant Henry Doelger Builder did not breach any duty owed plaintiff, or the accident didn't happen by any negligent act of defendant Henry Doelger Builder, or that the accident was sole [*sic*] caused by an independent act or omission of some other person than the defendant Henry Doelger Builder, then the accident is not one for which defendant Henry Doelger Builder can be held responsible." This instruction was fully covered by other instructions given by the trial court. The jury were instructed: "If defendant exercised ordinary care and did all that an ordinarily prudent person would have done, in the circumstances, to avoid an accident, it is not chargeable with negligence." They were also instructed: "I instruct you that the negligence, if any, of other subcontractors may

not be imputed to Henry Doelger Builder, Inc." In addition to this they were given the usual general negligence instructions.

It is also urged by appellant that it was error for the trial court to refuse to give its proposed instruction reading as follows: "If the defendant Henry Doelger Builder had no greater opportunity to observe the condition of said plank or scaffolding than the plaintiff, and plaintiff Ralph Effisimo failed to observe the dangerous condition, if any, if [sic] a plank or scaffolding, then it must be decided that the defendant did not know of the dangerous condition of said plank or scaffolding and the defendant Henry Doelger Builder cannot be liable to the plaintiff in this case." This instruction, however, is not the law. It does not use "a reasonable person" as the standard, it uses Ralph Effisimo instead. Also, it omits the duty of the owner to warn an invitee where the danger is not obvious and is not known to the owner or general contractor, but would be known to him in the exercise of ordinary care.

Appellant is also of the opinion that the jury should have been instructed on the doctrine of assumption of risk. For this doctrine to be applicable, the plaintiff must knowingly manifest his assent to a dangerous condition, or know that a dangerous condition exists, or "must have had knowledge of the hazard." The facts in this case do not meet either of these requirements. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].) Respondent urges res ipsa loquitur in support of the judgment but this support is unnecessary in view of our decision.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied July 19, 1961.