[Civ. No. 23761.   First Dist., Div. Two.   Jan. 22, 1968.]

JOSEPH V. COSTELLO, JR., et al., Plaintiffs and Appellants, v. WELLS FARGO BANK, Defendant and Respondent.

[Civ. No. 23839.   First Dist., Div. Two.   Jan. 22, 1968.]

JOSEPH V. COSTELLO, JR., et al., Plaintiffs and Appellants, v. MANA & BUGATTO et al., Defendants and Respondents.

(Consolidated Appeals.)

Knight, Boland & Riordan and Stanton G. Ware for Plaintiffs and Appellants.

Brobeck, Phleger & Harrison, Elke, Farella, Braun & Martel, John E. Munter, Robert E. Metz and Jerome Braun for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiffs appeal from two separate judgments, each of which was entered after the court sustained a demurrer to the original complaint without leave to amend. The two cases involve related issues and were consolidated on appeal by order of this court.

The complaint in the first of the two actions subject of this appeal alleged that plaintiffs Joseph Costello, Jr., Charles Strain and John Levinsohn were licensed real estate brokers and partners in the firm of Hill & Co.; that defendant Wells Fargo Bank was the executor of the wills of Dorothy Johnson and of Byron Johnson, deceased; that the assets of each of

the two estates included an undivided one-half interest in certain San Francisco real property; that on March 2, 1965, defendant, acting in its capacity as executor of the two estates, published notice that offers would be received for the sale of said property until 3 p.m. on April 5, 1965; that in reliance on said notice, plaintiffs solicited, procured and delivered to defendant, prior to the stated deadline, an offer to purchase the property and a deposit to be applied against the purchase price; that on April 5, 1965, defendant accepted the offer in writing, subject to court confirmation of the sale, and agreed that upon such confirmation, plaintiffs would be paid a real estate brokerage commission in the total amount of $5,650.30; that defendant was obligated under the agreement with plaintiffs to report the sale to the court and to petition the court for confirmation of said sale within 30 days from the date thereof in accordance with section 755 of the Probate Code; that defendant failed to file the report and petition until May 10, 1965, and that the court refused to confirm the sale upon the ground that said petition and report of sale were not filed within the time required under section 755 of the Probate Code; that plaintiffs were thereby deprived of the real estate commission which defendant had agreed to pay upon the sale of the property. Plaintiffs sought damages in the amount of the commission agreed upon and alleged, as alternative theories of recovery, that defendant's failure to file the report and petition within the 30-day period constituted (1) a breach of the written agreement of April 5, 1965, and (2) negligence.

Plaintiffs contend that their complaint states a cause of action against the executor on a contract theory because every contract imposes upon each contracting party an implied duty to do everything that the contract presupposes that he will do to accomplish its purpose. (*Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].) Since defendant executor was thus impliedly obligated to see that the report and petition for confirmation of sale were timely filed, plaintiffs reason that its failure to do so constituted a breach of contract for which it was personally liable to plaintiffs. This argument is obviously unsound, since section 760 of the Probate Code[1] expressly provides that ''By the execution of

[1]Section 760 of the Probate Code provides that: ''The executor or administrator may enter into a written contract with any bona fide agent or broker, or multiple group of agents or brokers, to secure a purchaser for any real or personal property of the estate, which contract may provide for the payment of a commission out of the proceeds of the sale.

any such contract no personal liability shall attach to the executor. . . ."

Plaintiffs' contention that defendant executor was liable to them on a tort theory under section 759 of the Probate Code[2] is likewise untenable. It is apparent, first of all, that the contract with plaintiffs affords the sole basis for the imposition of the "duty" which defendant was alleged to have negligently breached. Thus, whether plaintiffs' cause of action against defendant be stated in terms of contract or negligence, it still constitutes an attempt to impose personal liability upon the executor "[b]y the execution of" the contract and is thus violative of section 760. In any event, section 759 authorizes the bringing of a tort action against the executor only by a "person interested in the estate." Plaintiffs were not persons interested in the estate, since the sale to the purchaser procured by plaintiffs was never actually made and confirmed by the court, and section 760 thus affords no basis for the imposition of liability of any kind upon the Johnson estates. In *Estate of Rule* (1944) 25 Cal.2d 1, 9-10 [152 P.2d 1003, 155 A.L.R. 1319], the court, in analyzing section 760, stated, "The . . . language providing against liability 'unless an actual sale is made and confirmed by the court' clearly indicates that in the contemplation of the statute the sale is not regarded as 'made' unless and until it is confirmed by the court. Hence, strictly speaking, the purchaser cannot be regarded as 'secured' until the sale has been confirmed, nor, by the other . . . language of the section, is the contract valid or binding for any purpose unless and until the sale is confirmed" (p. 10).

The complaint in the second action alleged that defendants Stephen Mana and Benito Bugatto were attorneys employed by the executors of the estates of Dorothy and Byron Johnson; that in connection with the sale agreement discussed above, defendants had the obligation and duty to cause a re-

---

"When said sale is confirmed to such purchaser, such contract shall be binding and valid as against the estate for an amount to be allowed by the court. By the execution of any such contract no personal liability shall attach to the executor or administrator, and no liability of any kind shall be incurred by the estate unless an actual sale is made and confirmed by the court."

[2]Section 759 of the Probate Code provides that: "If there is any neglect or misconduct in the proceedings of the executor or administrator in relation to any sale, by which *any person interested in the estate* suffers damage, the party aggrieved may recover the same in an action upon the bond of the executor or administrator, or otherwise." (Italics added.)

port of said sale and petition for the confirmation thereof for each estate to be prepared, executed by the executors and filed with the court within 30 days from said sale in accordance with the provisions of section 755 of the Probate Code; that defendants negligently failed to cause the filing of said reports and petitions within the time required and, as a result of such failure, the court refused to confirm the sale and the real property in question was subsequently sold to a buyer not procured by plaintiffs for a net price substantially less than the price procured by plaintiffs; that defendants' negligent conduct was the proximate result of plaintiffs' sustaining damages in the amount of the real estate commission to which they would otherwise have been entitled.

In support of the complaint in the second action, plaintiffs rely solely upon *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], wherein the court held that an attorney who was employed by a testator to prepare a will and who was negligent in the performance of this task was liable to the intended beneficiary even though there was no privity of contract between the attorney and the beneficiary. The court stated that the determination whether a defendant would be held liable to a third party not in privity of contract was a matter of policy which involved the balancing of the following factors: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm." (*Lucas* v. *Hamm, supra,* at p. 588.) Plaintiffs assert that when the allegations of their complaint against the attorneys for the executors are subjected to this balancing test, it becomes apparent that said complaint does state a cause of action in negligence even in the absence of privity of contract.

■ Defendant attorneys, on the other hand, assert that *Lucas* v. *Hamm, supra,* did not involve a situation, such as that here present, where the only injury resulting from the attorney's negligence consisted of interference with the contractual relations of another. Defendants rely upon *Stromer* v. *City of Yuba City* (1964) 225 Cal.App.2d 286 [37 Cal.Rptr. 240], as authority for the rule that the courts do not recognize a cause of action for negligent, as opposed to intentional, conduct which interferes with a contract between third parties. We agree.

In the *Stromer* case, plaintiff's complaint alleged that he was a licensed real estate broker who had been employed to find a purchaser for a prune orchard; that after he had performed this duty and an agreement had been reached between the buyers and sellers, defendant city wrongfully destroyed over 100 prune trees in the orchard and thereby caused the buyers to cancel the sale and plaintiff to lose his agreed real estate commission. The trial court sustained a demurrer to the complaint, and the judgment of dismissal was upheld on appeal. The court, in so holding, reaffirmed the rule of *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], that "there is no liability for a negligent interference with the performance of contracts between third persons." (*Stromer* v. *City of Yuba City, supra,* at p. 289.)

Plaintiffs contend that the *Stromer* and *Fifield Manor* cases are distinguishable because both involved negligent defendants who were total strangers to the parties with whose contracts they allegedly interfered, whereas in the case at bar, defendant attorneys were employed by the executors, who were parties to the contract with plaintiffs. In making this argument, plaintiffs are contending, in effect, that the defect of the complaint in the *Stromer* case consisted of the fact that the defendant who negligently cut down the prune trees, and thereby caused a cancellation of the agreement whereby plaintiff was to receive a commission on the sale of the orchard, was not employed by or under contract to either of the parties to the sale agreement. Plaintiffs' position cannot be upheld, since it is apparent that the holding of the *Stromer* case was that negligent, as opposed to intentional, conduct does not result in liability for interference with contracts. Plaintiffs have failed to demonstrate why a different rule should apply merely because a defendant's negligence occurred during the course of his employment by one of the parties to the contract which was abrogated as a result of his negligence.

Plaintiffs also suggest that one of the factors present in *Stromer,* namely, the possibility of determining whether the defendant's negligence was actually the cause of the cancellation of the contract, is absent in the instant case. Plaintiffs thus assert that since their complaint alleged that the court refused to confirm the sale upon the express ground that the report and petition were not timely filed, it is apparent that the sale would otherwise have been consummated and that

defendants' dilatoriness was the sole cause of the loss of plaintiffs' commission.

A reading of *Stromer* leaves no doubt that the distinction urged by plaintiffs is in fact nonexistent. The complaint in *Stromer* alleged that plaintiff's performance had been completed and the contract had been completely executed except for the closing of the escrow resulting in the payment of the purchase price and the passage of title. The court nevertheless refused to adopt a rule of liability which might have a deleterious result in other cases, stating: ''In this case, clear and convincing proof of plaintiff's loss and defendants' negligence may be possible. But if we adopt a rule of liability for negligent interference (even though its application be limited to contracts as nearly executed as this one was with wholly executory contracts excluded) [footnote omitted] do we not possibly open a Pandora's box of imaginative claims to be accepted for litigation?'' (P. 291.)

Plaintiffs finally assert that the instant case is factually indistinguishable from the situation presented in *M. Miller Co.* v. *Dames & Moore* (1961) 198 Cal.App.2d 305 [18 Cal. Rptr. 13], wherein this court reversed a summary judgment and held that a firm of soil engineers which had negligently prepared certain soil reports could be held liable to a contracting firm which, in reliance upon said reports, submitted a bid substantially lower than the actual cost of installing certain sewer pipe. However, the damages allegedly sustained in that case did not consist of the cancellation of a contract with a third party and the result of the soil engineers' negligence was to render plaintiffs' performance of an existing contract economically unfeasible. That case accordingly did not present a situation such as that involved in the instant case and in the *Fifield Manor* and *Stromer* cases where the adoption of a rule of liability might well result in fraudulent and collusive claims which the defendant would be in no position to disprove.

Judgments affirmed.

Agee, J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 20, 1968.