[Civ. No. 8599.   Fourth Dist., Div. One.   Oct. 4, 1968.]

MARION L. HOLLIDAY, Plaintiff and Respondent, v. MILES, INCORPORATED, Defendant and Respondent; HARTFORD ACCIDENT & INDEMNITY COMPANY, Intervener and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Schall, Nielsen & Boudreau and Sidney A. Stutz for Intervener and Appellant.

John W. Holler for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

WHELAN, J.—Appeal by an intervening workmen's compensation insurer from a nonsuit judgment in a personal injury case.

The action in the court below was brought by Holliday for damages caused by the alleged negligence of Miles, Inc., doing business as Leslie Miles Plastering Company (Miles) during the course of and while Holliday was engaged in the duties of his employment by Apex Supply Company (Apex).

Hartford Accident and Indemnity Company (Hartford), insurance carrier for Apex, filed a complaint in intervention to recover workmen's compensation benefits paid by it to Holliday.

The appeal is by Hartford from a judgment of nonsuit made at the conclusion of Holliday's case in chief after argument by counsel for Holliday and Miles. Holliday also filed a notice of appeal, but abandoned it in the court below.

THE EVIDENCE

Holliday was employed by Apex, a subcontractor installing an automatic fire sprinkler system during the construction of a large retail department store.

On June 22, 1961, Holliday was installing sprinkler drops in the ceiling of the second floor using a rolling scaffold owned by Apex. Holliday had assisted in moving five such

scaffolds to the second floor from the first floor where he had worked earlier. The second floor at that time was one unpartitioned room perhaps 200 x 500 feet in area. Two large scaffolds constructed by an employee of Miles occupied a space along the west wall of the room, and in size were together perhaps 30 feet from north to south and 20 feet from east to west. Holliday had previously seen the man who built the scaffolds working on them.

Holliday, desiring to work in the space occupied by the Miles scaffolds, made no attempt to move them, but climbed onto the more northerly of the two sections from his own scaffold. At that time two employees of an electrical subcontractor were working on the other of the two Miles scaffolds.

After spending about 15 minutes installing one or more sprinkler drops, Holliday walked to the other end of the scaffold to install another drop; a plank supporting the floor planks broke, causing him to fall to the ground. The broken board had two knots in it or was cross-grained.

Holliday and the owner of Apex testified that there was a custom and practice in the construction industry that employees of one subcontractor used the scaffolding of other subcontractors.

Wulff, the owner of Apex, testified concerning the custom or practice that if there were no one else on a scaffold belonging to a subcontractor, an employee of another subcontractor could use it without requesting specific permission to do so if needed to get the job done; that such a workman was subject to being ordered off, in which case he would comply; that in using the scaffold of a subcontractor other than his employer, it was regarded that a workman did so at his own risk. Holliday's testimony on the subject did not include the last-mentioned condition of the practice.

A safety engineer testified that the planks on the scaffold violated Construction Safety Order #1647(c) because they were only two by six rather than two by ten. Holliday had seen two employees of Miles making use of scaffolds owned by Apex.

### The Theory on Which the Case Was Tried

The complaint in intervention alleged that Holliday on the scaffolding of Miles was a business invitee and that Miles was "in full and complete control of supplying said scaffolding for plaintiff's use."

In stating that the motion for nonsuit was granted, the court said in part:

"The evidence discloses clearly and without any contradiction that there were no business dealings between the plaintiff and the defendant; or business dealings between the employer of the plaintiff or the defendant.

"The plaintiff is either a licensee or a gratuitous licensee. He is certainly not a business invitee or a businese licensee or a business visitor. There is no business between these parties. Therefore, under the definitions and the evidence, he is a licensee. I do not think there is any other status that you could give the plaintiff."

Many decisons have discussed the question of the obligation of a subcontractor to the employee of another person as being analagous to that arising from the status of an occupier of land to business invitees, licensees or trespassers.

Within that concept the owner of a chattel that occupies a certain space upon real property and is intended for a certain temporary use with relation to the real property has been said with regard to another person who uses the chattel to have the same duty of care as has the occupier of real property to a business invitee, a licensee or trespasser, as the case may be.[1]

If the concepts of duty owed by an occupier of real property are so applied, logic might favor the views of those courts that have held that an employee of one contractor who, by a custom in the building trades, uses scaffolding, staging or ladders of another employer, without there being a duty on the part of such other employer to furnish such appliances for the use of the first employer, does not, in using such equipment, have a status comparable to that of a business invitee in relation to the owner of the equipment. Such courts have applied a common interest or mutual advantage test, which requires that the owner of a scaffold or other appliance receive benefit or advantage from the permitted use by another of that particular piece of equipment. If there is such benefit, the user is an invitee; if not, he is a licensee. (*Arthur* v. *Standard Engineering Co.* (D.C. Cir.) 193 F.2d 903 [89 App. D.C. 399, 32 A.L.R.2d 408, 414] (cert. denied, 343 U.S. 964 [96 L.Ed. 1361, 72 S.Ct. 1057]) ; *Brauner* v. *Leutz,* 293 Ky. 406 [169 S.W.2d 4] ; *Mahoney* v. *W. A. Murtfeldt Co.,* 198 Mass. 471 [84 N.E. 798] ; *Mauer* v. *Ferguson,* 17 N.Y.S. 349 ; *Wright* v. *Kansas City Structural Steel Co.,* 236 Mo.App. 872 [157 S.W. 2d 582] ; *Klovski* v. *Martin Fireproofing Corp.,* 363 Mich. 1

---

[1]The redefinitions of the Restatement Second of the Law of Torts (1965) found in sections 391, 392 and 394 have made the use of such analogies unnecessary.

[108 N.W.2d 887]; *Cohen* v. *Josam etc. Corp.*, 120 Misc. 588 [200 N.Y.S.2d 88].) Other courts have adopted "the reasonable convenience rule," to the effect that where a contractor erects in or on the framework of a building under construction a scaffold or platform for the use of his own immediate employees, but so constructs and locates it that another subcontractor must of necessity or under the requirements of reasonable convenience in the performance of his work use the same, the contractor erecting the scaffold should have anticipated such use and is liable to the subcontractor and his employees for the safety thereof (32 A.L.R.2d 412).

Such a rule has been applied in *Quigley* v. *Thatcher*, 207 N.Y. 66 [100 N.E. 596]; *McGlone* v. *William Angus, Inc.*, 248 N.Y. 197 [161 N.E. 469]; *Duggan* v. *National Constructors & Engineers, Inc.*, 223 App.Div. 163 [228 N.Y.S. 126]; *Richards* v. *Watson Flagg Engineering Co.*, 109 N.J.L. 128 [160 A. 500]; *Meny* v. *Carlson*, 6 N.J. 82 [77 A.2d 245, 22 A.L.R.2d 1160]; *McComish* v. *De Soi*, 42 N.J. 274 [200 A.2d 116]; *Bilton* v. *Mackenzie*, 31 Ont.L.Rep. 585, 19 D.L.R. 633, App. Div.

In the absence of contract, the workman using equipment of a contractor other than his employer does not have a right to use it equal to that of an employee of the owner, and would have to yield to such a one who desired its use; he could be forbidden its use by the owner, even though the equipment was then not being used; he would have no right superior to that of another nonemployee of the owner working for yet another contractor; whereas, as to the use of equipment furnished him by his own employer he would have rights superior to the rights of the employees of all other contractors.

Of the decisions of those courts that have held the injured workman in such circumstances to have rights comparable to a business invitee, it is fair to say that their decisions have been the result of a policy chosen deliberately.

Some of the California decisions that have touched upon the subject seem to have been decided without regard to the true status or relationship of the owner of equipment to a person using such equipment, but to have found a certain relationship to exist as the result of a prior determination that the owner of the equipment should have foreseen the possibility of its use by a plaintiff and his possible injury if the equipment should be defective.

The decision of *Rowland* v. *Christian*, 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], makes it unnecessary to decide

what should be the policy of the California courts with regard to the status of the injured workman in such a situation. *Rowland* v. *Christian, supra,* 69 Cal.2d 108, deals with the relationship of one occupying real property and a social guest within the correct applications of those terms. We conclude, however, that the rules stated therein as to the duty of care owing by an occupier of real property will be held to apply to the owner or supplier of a chattel toward one using such chattel in those situations in which analogies have elsewhere been drawn to the varying obligations owing by the owner or occupier of land toward business guests, licensees, and trespassers.

In general the question whether certain consequences of an act or omission are reasonably foreseeable is one for the trier of fact, so that if the rule declared in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, were applied in the case at bench, a reversal would be indicated on appeal by Holliday. We now consider whether on an appeal by Hartford, who stands in the shoes of Holliday's employer, the facts of the case require reversal.

### THE QUESTION OF THE EMPLOYER'S NEGLIGENCE

We note at the outset that the employer's negligence was not alleged in answer to the complaint in intervention.

We put aside other questions that presented themselves when the case was considered as one to be decided solely upon the ground that Holliday did or did not occupy a position with relation to Miles similar to that of a business invitee. Among those questions are whether the existence of a custom of the kind in question is sufficient to create a status relationship between an employee of one subcontractor with another subcontractor[2]; whether there must be actual knowledge of

---

[2] "The general custom of workmen to use a common runway communicating with a steel structure in the process of building, will in no way aid in determining whether an employee of an entirely different contractor has a right to use a special runway which was constructed for a particular purpose, or to decide whether the injured party acted as an invitee or a mere licensee in his use thereof." (*State Comp. Ins. Fund* v. *Allen,* 104 Cal.App. 400, 413-414 [285 P. 1053].)

See also *Pettyjohn & Sons* v. *Basham,* 126 Va. 72 [100 S.E. 812, 38 A.L.R. 391], in which the court said: "[T]he evidence fails to show that the use of the scaffold by Basham for getting upon the roof was for the common interest and mutual benefit of both parties. (38 A.L.R. 391, 395] . . .

"If simply convenient, the use of it was as a licensee, and not as an invitee. The attempted proof of a custom or usage of trade for subcontractors to use scaffolds left in place by the general contractors was unsuccessful even if it could have affected the result in a case where the use was not necessary. [38 A.L.R. 391, 395-396] . . .

the existence of such a custom on the part of the nonemploying subcontractor.

If it be assumed that the defendant in an action such as this must plead the concurrent negligence of the plaintiff's employer to defeat a claim for reimbursement by the employer's insurance carrier, the necessity therefor was not apparent from the theory of Holliday and Hartford as disclosed by their pleadings.

The theory upon which the complaint in intervention was brought was such that the evidence in support of it was deficient to show an obligation on the part of Miles to furnish equipment for the use of the employees of Apex such as existed in the cases of *Brumhall* v. *Sutherland,* 110 Cal.App. 10 [293 P. 672]; *Fountain* v. *Willard-Slater Co.,* 172 Cal. 129 [155 P. 630]; *Slovick* v. *James I. Barnes Constr. Co.,* 142 Cal.App.2d 618 [298 P.2d 923]; *Effisimo* v. *Henry Doelger Builder, Inc.,* 193 Cal.App.2d 462 [14 Cal.Rptr. 445].[3]

We are of the opinion also that the trial court ruled correctly that the evidence as a matter of law failed to show that Holliday with relation to Miles occupied a position comparable to that of a business invitee to the occupier of land.[4] That would be so even if we were to disregard the testimony of the owner of Apex that a workman using the scaffolding of a subcontractor other than his employer did so at his own risk.

But the evidence supports an unpleaded theory that might make Miles liable to Holliday in the light of *Rowland* v. *Christian, supra,* 69 Cal.2d 108.

The determination that Miles did not owe to Holliday the

---

"No foundation was laid as to either of them for proving a general custom or usage of trade, or any knowledge on the part of Pettyjohn & Sons of either a general or special usage in such case. . . .

". . . . . . . . . . .

"This is far from proving a usage of trade to the extent and for the purpose of showing that the plaintiff was invited to use the scaffold, upon which he had no work to do, as a means of access to the roof." [38 A.L.R. 391, 396.]

[3]"The law is well settled that in order to maintain an action of this character it must be made to appear that appellant owed some duty or obligation to plaintiff which it failed to discharge or perform. Unless there is some contract, duty or service which a party is bound to fulfill, there can be no negligence, fault or breach of obligation." (*Slyter* v. *Clinton Constr. Co.,* 107 Cal.App. 348, 353 [290 P. 643].)

[4]"Each was there under contract to perform separate and distinct work on the building, independent of each other. As to the owner, they were each invitees, and as to each other they were strangers between whom there was no privity of contract." (*Perry* v. *D. J. & T. Sullivan, Inc.,* 219 Cal. 384, 389 [26 P.2d 485].)

same duty that a possessor of land owed to a business invitee as such duty was recognized prior to the decision in *Rowland* v. *Christian, supra,* is not dispositive of the case. ''The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.'' (p. 119)[5]

If it be assumed that the custom-existed as testified to by Holliday and that knowledge of the custom was imputed to all persons engaged in the construction industry, and, therefore, to Miles, then such knowledge was equally chargeable to Apex, the employer of Holliday.

In the face of knowledge that his employees were using or would use the equipment of Miles, Apex had a statutory duty to see that such equipment was safe for the use of his employees, a duty that could not be delegated to Miles. (*Hayes* v. *Western Fuel Co.,* 19 Cal.App. 634, 644 [127 P. 518] ; *Jones* v. *McFarland Co-op Gin, Inc.,* 237 Cal.App.2d 94, 98 [46 Cal.Rptr. 572] ; *Conner* v. *Utah Constr. & Mining Co.,* 231 Cal.App.2d 263, 276 [41 Cal.Rptr. 728].) Nor is there any evidence that any such delegation of duty was attempted.

---

[5]The application of that rule places in proper perspective certain decisions of our courts the language of which can be twisted to suggest that possible liability might be predicated upon the existence of a status relationship when in fact it would have been based upon the reasonably foreseeable consequences of a course of conduct (See *Boucher* v. *American Bridge Co.,* 95 Cal.App.2d 659 [213 P.2d 537].)

'' [T]here is evidence from which a jury could find that plaintiff and the other electricians were following the steelworkers, used ladders of the steelworkers as well as their own, had not been told not to use an uncompleted truss (there was no evidence of their being told when a truss was completed), and that under all the circumstances of the case there was an implied invitation to plaintiff to use the truss in question to get to the nearest ladder.

'' . . . . . . . . . . . .
'' [U]nless defendant knew or had reason to know that plaintiff would go on the steel work, the only duty owed plaintiff by defendant would be that of refraining from causing him wilful and wanton injury.'' (*Boucher* v. *American Bridge Co.,* 95 Cal.App.2d 659, 664, 666 [213 P.2d 537].)

'' The jury were clearly informed that although a general contractor was not ordinarily liable for a lack of care in the construction or maintenance of runways or appliances not intended for the use or benefit of the subcontractor or his workmen, still if the general contractor knew they were likely to be so used, he would be liable for injuries sustained through a lack of ordinary care, even to a licensee who had no absolute invitation or right to use the same.'' (*State Comp. Ins. Fund* v. *Allen,* 104 Cal.App. 400, 411 [285 P. 1053].)

That duty has been said to be greater than that owed by a business invitor to his invitee. (*Hill* v. *Eaton & Smith*, 65 Cal.App.2d 11, 13 [149 P.2d 762].)[6]

The very theory which would place liability upon Miles furnishes the base for denying any recovery to the employer of the injured workman because of the employer's breach of a statutory duty. (*Conner* v. *Utah Constr. & Mining Co., supra*, 231 Cal.App.2d 263, 276.)[7]

The complaint in intervention did not disclose that the claimed duty of Miles to supply scaffolding, and, therefore, safe scaffolding, for Holliday's use arose from a trade custom that Holliday as the employee of Apex might, and should be expected to, make use of equipment supplied by Miles primarily for the use of its own employees. Had such theory been pleaded, it would have been apparent on the face of the complaint that if Miles had failed to furnish equipment safe for use, Apex by the same token failed in a duty to see that such equipment should be safe for the use of its employee.[8]

In those circumstances, it would be proper in the event of a reversal to do so with directions that Miles be permitted to plead the concurrent negligence of Apex.[9]

It would be an idle act, therefore, to reverse the judgment as to Hartford, since if the evidence is sufficient to support a verdict in favor of Holliday it must at the same time show Apex to have been negligent in the performance of the duty it owed its employee. That being so, Hartford may not recover.

[6] "Since plaintiff was the employee of the subcontractor, his relationship to the contractor was that of a business visitor or invitee. (*Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622 [104 P.2d 26].) Defendant, however, was not the employer of plaintiff and did not owe him the same duty to make the premises safe that an employer owes to an employee." (*Hill* v. *Eaton & Smith*, 65 Cal.App.2d 11, 13 [149 P.2d 762].)

[7] "[T]he evidence is such that the jury could not find that Utah was negligent without also finding that Statewide was concurrently negligent." (*Conner* v. *Utah Constr. & Mining Co.*, 231 Cal.App.2d 263, 276 [41 Cal.Rptr. 728].)

[8] There is nothing in the record to suggest a claim that because Miles, under the customary practice relied upon, might be said to be furnishing a place of employment for or an appliance for the use of Holliday, he was therefore an employer of Holliday under sections 6400-6403, Labor Code. Where such a theory of liability is relied on it is at least proper to allege it, as was done in *De Cruz* v. *Reid*, 69 Cal.2d 217, 221 [70 Cal.Rptr. 550, 444 P.2d 342].

[9] In *De Cruz* v. *Reid*, 69 Cal.2d 217, 223 [70 Cal.Rptr. 550, 444 P.2d 342], it is pointed out that the defendants neither introduced nor offered evidence of the concurrent negligence of the deceased employee's employer; the failure to plead it is not mentioned. *Benwell* v. *Dean*, 249 Cal.App.2d 345 [57 Cal.Rptr. 394], assumes the necessity of pleading such negligence.

(*Witt* v. *Jackson,* 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641] ; *Jones* v. *McFarland Co-op Gin, Inc, supra,* 237 Cal.App. 2d 94; *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal. App.2d 263; and see cases cited in *De Cruz* v. *Reid,* 69 Cal. 2d 217, 226 [70 Cal.Rptr. 550, 444 P.2d 342].)

Judgment affirmed.

Coughlin, Acting P. J., and Lazar, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1968.

_____

*Assigned by the Chairman of the Judicial Council.