[Civ. No. 14832. Third Dist. July 21, 1975.]

JAMES B. ADAMS et al., Plaintiffs and Appellants, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY et al.,
Defendants and Respondents:

## COUNSEL

Gladstein, Leonard, Patsey & Anderson, Norman Leonard and Jed Gladstein for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, John M. Morrison and Philip B. Laird, Jr., Deputy Attorneys General, Fitzwilliam, Memering, Stumbos & DeMers, Donald S. Walter, Dianna Z. Hoffman, R. James Diepenbrock, Diepenbrock, Wulff, Plant & Hannegan, Jack V. Lovell, Hoffman, Mayhew & Gallawa and Robert B. Mikael for Defendants and Respondents.

## OPINION

**FRIEDMAN, J.**—On April 28, 1973, a trainload of military bombs carried by a Southern Pacific freight train detonated in the railroad's freight yards at Roseville. A series of violent explosions occurred, causing damage throughout the neighborhood. Twenty-four plaintiffs

filed this damage action against Southern Pacific Transportation Company, the State of California and the Counties of Placer and Sacramento, alleging that plaintiffs had been employed by the Los Angeles By-Products Company, whose plant was destroyed by the explosion; that plaintiffs had thus lost employment and wages; that their losses were caused by Southern Pacific's negligence in transporting and handling the bombs and by the negligence of the public defendants, who failed to require buffer zones or spacer cars and failed to provide adequate emergency services.

The trial court sustained the separate demurrers of these various defendants, denying plaintiffs' leave to amend their complaint against the railroad, but granting leave to amend as to the public defendants. Plaintiffs elected to stand on their complaint and judgments of dismissal were entered from which they appeal. In testing the complaint's sufficiency, we assume the truth of its allegations, including negligence and cause in fact. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

## I.

Of immediate significance in the decision of this appeal is *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]. There the California Supreme Court rejected the suit of a medical service corporation which sought to recover its medical service outlays from an automobile driver who had negligently-injured one of its clients. The *Fifield* opinion declared (54 Cal.2d at p. 636), "[W]ith the exception of an action by the master for tortious injuries to his servant, thus depriving the master of his servant's services, which traces back to medieval English law [citations], the courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome. [Citations.]"

*Fifield* quoted with approval from an Ohio intermediate appellate decision denying recovery to a workman who lost wages when his place of employment was shut down because of an explosion in the defendant's neighboring plant. The Ohio court stated: "It is our opinion that the courts generally have reached a wise result in limiting claims for damages in this class of cases to who [*sic*] may have sustained personal injuries or physical property damage and in refusing to open their doors

in such cases to claims of loss of wages and other economic loss based on contract." (*Stevenson* v. *East Ohio Gas Co.,* 47 Ohio L.Abs. 586 [73 N.E.2d 200, 204], quoted in *Fifield Manor* v. *Finston, supra,* 54 Cal.2d at p. 636.)

The *Fifield* rule was reiterated in *Costello* v. *Wells Fargo Bank* (1968) 258 Cal.App.2d 90, 94-96 [65 Cal.Rptr. 612], and by this court in *Stromer* v. *City of Yuba City* (1964) 225 Cal.App.2d 286, 288-289 [37 Cal.Rptr. 240]. It is an expression of a general doctrine prevailing in American courts which bars recovery for negligent interference with profitable economic relations.[1]

The principle of *stare decisis* requires this court to adhere to the *Fifield* rule and to affirm the denial of recovery for wages lost through the negligent destruction of plaintiffs' job site. As an intermediate appellate court, we must decide the liability issue in conformity with the state Supreme Court's last utterance in point. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [25 Cal.Rptr. 321, 369 P.2d 937]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 656, 664.)

Plaintiffs argue that *Fifield* and its companion decisions are not in point. Their lawsuit, they argue, is not cast in terms of interference with employment contracts but alleges physical destruction of the property which enabled them to earn a livelihood. Indeed the argument has substance. There is only a skimpy analogy between the *Fifield* plaintiff (i.e., an indemnitor or insurer seeking to recoup the cost of a deliberate business risk) and the wage earner whose job site is destroyed. To subsume both losses under the "negligent interference with contract" rubric ignores a multitude of policy distinctions. Yet the *Fifield* opinion indulges in that subsumption. In citing the Ohio case, which denied

---

[1]See Prosser on Torts (4th ed. 1971) section 129, pages 938-941; 1 Harper and James, Law of Torts, section 6.10, pages 501-510; Greene, *Relational Interests* (1934) 29 Ill.L.Rev. 1041; Comment, *Negligent Interference With Economic Expectancy: The Case for Recovery* (1964) 16 Stan.L.Rev. 664.

The general rule was followed in *Robins Dry Dock & Repair Co.* v. *Flint* (1927) 275 U.S. 303, 309 [72 L.Ed. 290, 292, 48 S.Ct. 134], denying recovery for a ship charterer's loss of use when the defendant negligently damaged the vessel. The opinion of Holmes, J., declared: "[N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong."

Nevertheless, a number of decisions permit seamen to recover lost wages from a party who negligently damages their ship, seemingly as a "special right" extended to seamen as a favored class and immunized from the *Robins Dry Dock* rule. (*Union Oil Company* v. *Oppen* (9th Cir. 1974) 501 F.2d 558, 567; *Carbone* v. *Ursich* (9th Cir. 1953) 209 F.2d 178, 182; *Reefer Queen Co.* v. *Marine Constr.* (1968) 73 Wn.2d 774 [440 P.2d 448, 451].)

recovery for a wage loss, the *Fifield* decision identified physical destruction of the job site as one sort of negligent interference with contract relations. In unmistakable terms, the California Supreme Court announced its adherence to the doctrine of the Ohio decision. In labeling as an "exception" the employer's right to recover for loss of his employees' services, *Fifield* firmly placed within the general rule the employees' recovery for physical damage to his employer's business. The jaws of the *Fifield* precedent may gape too widely; yet they encompass plaintiffs' claim.

## II.

Principled obedience to the *Fifield* rule need not prevent awareness that it may be ripe for renunciation or limitation. ■ In following a rule of decisional law, an intermediate court of appeal may appropriately analyze the factors which cast doubt upon its viability.[2]

The *Fifield* rule is inconsistent with two later developments of California tort doctrine. The first finds expression in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], and *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. Earlier California decisions had firmly established a method for the analysis of negligence liability. That method had its starting point in a judicial (i.e., nonjury) inquiry into the existence of a duty of care. (See *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513], overruled in *Dillon* v. *Legg, supra; Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 488, 493.) Conventional negligence analysis next turned to the question of foreseeability. The duty of care was limited by the doctrine of *Palsgraf* v. *Long Island R. Co.*, 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253], which excluded recovery by persons outside a reasonably foreseeable zone of danger. (See 4 Witkin, *op. cit.*, Torts, § 489.)

*Dillon* v. *Legg* inaugurated an apparent revision of the conventional methodology. *Dillon* (68 Cal.2d at p. 741) postulated reasonable foreseeability as the primary, court-determined test of liability and relegated

---

[2]See 6 Witkin, California Procedure (2d ed. 1971) Appeal, § 665. In *Fuller* v. *Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 690-692 [58 Cal.Rptr. 792], this court pointed to the incongruities posed by a group of California tort law decisions, yet felt bound to adhere to them. The Supreme Court denied a hearing in *Fuller* v. *Standard Stations*, yet overruled these identical decisions a few years later. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 159-164, 167 [95 Cal.Rptr. 623, 486 P.2d 151].)

to a secondary, negative role the policy factors involved in the duty-of-care issue. Although *Dillon* v. *Legg* emanated from a sharply divided court, its analytical approach was confirmed by a heavier majority in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].

In *Rowland* v. *Christian* the court set forth Civil Code section 1714 as the fundamental rule of negligence liability in California,[3] rejecting common law rules which had traditionally limited the liability of land possessors. The court referred to the duty-of-care concept as a "departure from [the] fundamental principle" voiced in Civil Code section 1714 (69 Cal.2d at p. 112). Like *Dillon,* the *Rowland* decision relegated duty determinations to a secondary, rejective role.

Nothing in the language, purpose, or history of Civil Code section 1714 confines it to suits against land possessors. Indeed, *Rowland* v. *Christian* refers to the real estate cases as "One of the areas" where the courts had departed from the fundamental concept of section 1714. (69 Cal.2d at p. 113.) Later decisions explicitly or implicitly recognize section 1714 as a general principle of negligence liability in California. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 821 [119 Cal.Rptr. 858, 532 P.2d 1226]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 865 [106 Cal.Rptr. 388, 506 P.2d 212]; *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 177, fn. 2 [101 Cal.Rptr. 908, 496 P.2d 1276]; *Holliday* v. *Miles, Inc.* (1968) 266 Cal.App.2d 396, 400-401 [72 Cal.Rptr. 96].)

The Supreme Court has not yet revealed the doctrinal relationship between *Dillon* v. *Legg* and Civil Code section 1714. *Dillon* and *Rowland* have this much in common: they move the duty-of-care inquiry from its conventional position as the starting point of liability analysis and relegate it to a secondary, rejective role. Inferably, *Rowland* v. *Christian* relies—no less than *Dillon* v. *Legg*—upon foreseeability of harm as the prime test of negligence liability.

The alteration in analytical method effected by *Dillon* and *Rowland* has little impact on run-of-the-mill negligence suits, where the parties occupy a fairly direct spatial or legal relationship. It plays a significant, sometimes pivotal, role at the outer fringes of negligence liability, where

---

[3]Civil Code section 1714 declares: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

(as here) the plaintiff is physically remote from the wrong or lacks contractual privity with the wrongdoer.[4]

The second development consists of a group of California Supreme Court decisions involving plaintiffs who might be described as "secondary victims" because they had no direct spatial or legal relationship with the alleged wrongdoer.[5] The present plaintiffs may be viewed as secondary victims. Their claim rests upon destruction of the property of a primary victim, their employer; they assert neither physical proximity to the dangerous conduct nor privity of contract.

In *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], and *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], the court sustained negligence actions by the intended beneficiaries of wills which turned out to be invalid because of the negligence of a notary public, in the one case, and an attorney in the other. In each case the court exercised a policy judgment and found a duty of care despite the lack of contractual privity.

In *Dillon* v. *Legg, supra,* the court upheld the claim of another kind of secondary victim, a mother who suffered physical illness and emotional trauma when she witnessed the fatal injury of her child. As we have observed, the court gave primacy to the reasonable foreseeability of the harm, relegating the remaining duty factors to exclusion of "the remote and unexpected." (68 Cal.2d at p. 741.) *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], held a savings and loan association liable for its negligence in financing an irresponsible tract developer, who built shoddy homes purchased by the plaintiffs. The court sustained the home buyers' claims of economic loss; held that the lender had a duty of care which ran to potential home buyers; held that the lack of contractual privity did not absolve the lender from its negligence in creating an unreasonable risk of harm to home buyers. (69 Cal.2d at p. 865.)

In *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], the court upheld an accident

---

[4]Thus *Dillon* v. *Legg* overruled *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513], sustaining the claim of a plaintiff whom the *Amaya* rule would have barred. The *Dillon* analysis was utilized in *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, to overrule prior California decisions which had denied a wife's claim for loss of consortium caused by injury to her husband.

[5]See generally, Rintala, *The Supreme Court of California 1968-1969—Foreword* (1970) 58 Cal.L.Rev. 80-132.

victim's negligence claim against an insurance company which had issued a liability policy to the other driver without investigating the latter's insurability. Despite lack of privity, the court found a direct duty of care owed by the insurance company to accident victims such as the plaintiff. (71 Cal.2d at pp. 674-677.) In affirming this duty, the *Barrera* opinion emphasized the defendant's status as a public service entity. (71 Cal.2d at pp. 669-670.)

Lack of proximity and lack of privity did not prevent imposition of a duty of care running from a tavern keeper to a third person injured by a drunken driver to whom the tavern keeper knowingly sold liquor. (*Vesely* v. *Sager, supra,* 5 Cal.3d at pp. 164-167.) In *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, the Court indulged in a straightforward application of the *Dillon* v. *Legg* formula to overrule prior decisional law and permit recovery by a wife who claimed loss of consortium as the result of injuries to her husband.

Finally, we mention a case in which the court sustained recovery of relatively heavy economic losses consequential upon physical damage to the plaintiff's business property, without regard to the proportion claimed for each kind of injury. (*Reynolds* v. *Bank of America* (1959) 53 Cal.2d 49 [345 P.2d 926].) Commentators have noted the lack of logical consistency between such recoveries and the rule which prohibits recovery for economic expectancies absent physical damage. (See *Union Oil Company* v. *Oppen, supra,* 501 F.2d at p. 567; 16 Stan.L.Rev. at p. 668.)

## III.

In *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847], we observed that appellate determinations of the duty-of-care issue become crystallized as rules of law and hence as precedents. The *Fifield* opinion eschewed independent analysis of the duty factors affecting a third party's recovery for the negligent destruction of his economic expectations. Though couched as a rule of law, its rejection of compensability was really a summary denial of a duty of care.

In this opinion we have briefly described two later developments of California tort law. Both these developments seem to denigrate the precedential value of crystallized rules of duty. Both *Dillon* v. *Legg* and *Rowland* v. *Christian* show a departure from the conventional analysis which turned to the duty issue as a first order of business. Both

emphasize (*Dillon* expressly and *Rowland* implicitly) the primacy of case-by-case determinations of reasonable foreseeability; both relegate the duty test to a secondary role as a safeguard against remote and unexpected liabilities. "The defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 399, citing *Dillon* v. *Legg, supra.*) The *Dillon-Rowland* approach deflates the importance and force of duty formulations drawn from decisions of the past.

The shift in emphasis is not merely theoretical, not an exercise in abstract methodology. The renunciation of former rules of nonliability and repudiation of past decisions by *Dillon* v. *Legg* and *Rodriguez* v. *Bethlehem Steel* (see fn. 4, *ante* p. 43) illustrate the tangible consequences of the "new" analysis in probing the outer regions of negligence liability.

Guided by *Dillon* v. *Legg,* judges could hardly debate the reasonable foreseeability of the loss described in the present case. When transportation companies carry dangerous substances through populated and developed neighborhoods, physical destruction of job sites and consequent job losses are easily foreseeable results of careless handling. Having agreed upon reasonable foreseeability, the judges would then balance the risk-of-loss factors to affirm or negate a duty of care running from the defendant to the plaintiff or the plaintiff's class.

## IV.

Additional anomalies unfold when the *Fifield Manor* rule is juxtaposed to the "secondary victim" decisions. In the latter decisions, different opinion writers have emphasized different factors, thus blurring the emerging structural lines of liability analysis and handicapping comparisons. Comparisons, nevertheless, are possible in terms of results.

*Biakanja* v. *Irving* and *Lucas* v. *Hamm* recognize a duty of care to guard against foreseeable damage to the economic expectations of third persons; *Fifield Manor* v. *Finston* negates that duty. Paradoxically, *Biakanja* and *Lucas* demand reasonable care to protect the defeasible expectations of a testamentary beneficiary; *Fifield* withholds that protection from comparatively fixed, comparatively vital earnings. The social value of the lost legacy is recognized, that of lost livelihood denigrated. If foreseeability of harm is the fundamental criterion of liability, it is irrelevant that one loss stems from professional malpractice, the other

from a physical accident. Either kind of negligence may have widespread socioeconomic repercussions. Each, at some point, calls for juridical limits on the area of compensability. The worker in the destroyed factory has just as much and just as little privity with the negligent event as the beneficiary of the invalid will.

Although decided a year after *Dillon v. Legg,* the opinion in *Barrera* v. *State Farm* reverts to the conventional duty-of-care analysis. The *Barrera* decision (71 Cal.2d at pp. 669-670) emphasizes the defendant's status as a public service entity, which creates expectations of care extending beyond those in direct privity with it. Focal center of the analysis shifts from the relationship between the plaintiff and defendant to the societal responsibilities devolving from the defendant's status as a public service enterprise. *Barrera* thus finds a duty of care to a plaintiff with whom the defendant had no direct relationship. Applied here, the *Barrera* approach would demand consideration of the railroad's status as a public service entity whose carriage of dangerous cargo is vital to the economy, which nonetheless finds itself surrounded by expectations of public safety in the vicinity of its tracks. *Barrera* invites risk-of-loss allocations, a process which the flat *Fifield* rule would flatly proscribe.

Like *Biakanja* and *Lucas, Connor* v. *Great Western, supra,* recognizes liability for economic loss inflicted upon third persons with whom the defendant had no direct dealing. To be sure, the plaintiffs in *Connor* had suffered physical damage; that damage had been caused by the tract developer, not the savings and loan company; economic loss and not physical damage was the product of the latter's negligence. Although the *Fifield* rule would preclude recovery by the present plaintiffs, one may justifiably ask whether the losses of these plaintiffs were any less foreseeable than the injury which occurred in *Connor.*

Continuing adaptation of tort principle to a rapidly changing society creates inevitable assymetries. Quite aside from the balancing process which would recognize or reject the present plaintiffs' claims, the "rule" or "precedent" denying compensation for the destroyed economic expectancies of third parties is paradoxical when placed against the setting of later decisions. Resolution of the paradox is outside the province of this court.

We have described the doctrinal discord between *Fifield Manor* and later decisional developments without any attempt to augur compensabil-

ity of plaintiffs' damage claim. That determination would entail balancing of important and complex policy factors, a process which we rigorously eschew.[6] Although plaintiffs' loss was a foreseeable result of Southern Pacific's provisionally admitted negligence, we neither debate nor decide whether the railroad owed these plaintiffs a duty of care.

## V.

In support of their separate demurrers the state and the two counties asserted immunities under the public tort liability statutes. (Gov. Code, § 814 et seq.) The rationale which denies compensability to plaintiffs' wage losses disposes of the case against all the defendants. There is no necessity of passing upon the governmental immunity defenses.

Judgment affirmed.

Janes, J., concurred.

**PUGLIA, P. J.**—I concur in the result and join in parts I and V of the court's opinion.

One cannot gainsay the existence of the decisional trends analyzed by Justice Friedman which, when extrapolated to embrace the instant fact situation, would arguably work a different result. I abstain, however, from joining in the court's excursion into the outer reaches of theoretical negligence liability, not merely because such a digression is unnecessary to our decision, but primarily for the reason that I cannot subscribe to the exhortation implicit therein to extend further the reach of legal liability to encompass negligent interference with economic relations. Scholarly and incisive as the court's opinion is, it is more than a compendium of recent decisional evolvement in the field of negligence liability. Taken as a whole, it presents these developments as an inexorable tide, predestined inevitably to engulf the doctrine to which we unanimously agree we are here bound by the principle of *stare decisis*. I am satisfied, however, that there is much more that needs to be said before the principle of *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], is abandoned to this portended surge of judicial innovation. Notwithstanding, our function as

---

[6]See Prosser, *op. cit.*, page 940; 1 Harper and James, *op. cit.*, pages 509-510; 16 Stan.L.Rev. 664, 23 Cal.L.Rev. 420.

an intermediate appellate court is best subserved by resting our decision on settled law, eschewing ruminations on questions of policy the resolution of which is not confided to us.

Appellants' petition for a hearing by the Supreme Court was denied October 23, 1975. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.