[L. A. No. 25858. In Bank. Sept. 6, 1960.]

FIFIELD MANOR (a Corporation), Appellant, v. SIDNEY S. FINSTON et al., Respondents.

Overton, Lyman & Prince and George W. Prince, Jr., for Appellant.

Betts, Ely & Loomis and Richard F. Runkle for Respondents.

DOOLING, J.—Plaintiff brought this action to recover the cost of essential medical care rendered by it to George A. Ross, deceased, pursuant to a "life-care contract." Ross' injuries and death resulted from an automobile accident allegedly caused by defendants' negligence. A general demurrer to the complaint was sustained without leave to amend. From the judgment of dismissal accordingly entered, plaintiff appeals.

The essential allegations of plaintiff's complaint, accepted as true for purposes of this appeal (*Terry* v. *Bender*, 143 Cal. App.2d 198, 201 [300 P.2d 119]), show the following situation: Plaintiff, a nonprofit corporation, had entered into a life-care contract with Ross whereby it had "expressly agreed to provide to . . . Ross all essential medical care." (Welf. & Inst. Code, §§ 2350, 2353.) Thereafter, Ross was struck by an automobile negligently operated by defendant Sidney Finston and died some six weeks later as the result of his injuries. Pursuant to its contract, plaintiff provided essential medical services for Ross "including treatment by doctors, nursing care, medication and hospitalization" valued at $6,250. Plaintiff alleged its damage in that amount as a direct right of recovery from defendants; and it also alleged a right of subrogation, expressly assigned under the life-care contract, for "all expenses [it] incurred as the result of any injuries inflicted upon . . . Ross by reason of the negligence or carelessness of a third party."

There is no question as to the validity of the life-care contract. (Welf. & Inst. Code, div. 3, ch. 3, §§ 2350-2360.) Defendants however contest their liability to plaintiff either (1) on the basis of plaintiff's direct right of recovery for the financial loss it suffered in providing medical care for Ross because of defendants' negligence or (2) on the basis of the subrogation agreement in the life-care contract.

1. *Plaintiff's direct right of recovery.*

The life-care contract between plaintiff and Ross made plaintiff responsible for furnishing Ross essential medical treatment, nursing care and hospitalization; and Ross had a right to these services when necessary. Therefore, plaintiff contends, when defendants' negligent act necessitated plaintiff's furnishing medical services to Ross pursuant to the life-care contract, plaintiff's primary right to recover the resulting medical expenses sustains its direct cause of action against defendants as the wrongdoers responsible for plaintiff's damage. (Civ. Code, § 3281.) As analogous situations, plaintiff argues that it was in no different position in its duty to Ross and its

direct right to recover its damages from defendants as wrong-doers than the parents of a minor child seeking recovery of medical expenses incurred because of wrongful injuries to the child (Civ. Code, § 196; 14 Cal.Jur.2d, Damages, § 53, p. 681; *McManus* v. *Arnold Taxi Corp.*, 82 Cal.App. 215, 223 [255 P. 755]); a husband seeking recovery of medical expenses similarly incurred for his wife because of wrongful injuries (Code Civ. Proc., § 427; *Walling* v. *Kimball*, 17 Cal.2d 364, 371 [110 P.2d 58]); or an employer seeking the recovery of medical expenses incurred for an employee wrongfully injured in his employment (Lab. Code, § 3852).

In *Follansbee* v. *Benzenberg*, 122 Cal.App.2d 466 [265 P.2d 183, 42 A.L.R.2d 832], plaintiff's husband was fatally injured in an automobile accident caused by defendants' negligence. Plaintiff had incurred hospital and medical expenses for her husband's care and treatment. It was held that these expenses were not recoverable by decedent's estate under section 956 of the Civil Code, for such expenses were incurred by plaintiff wife pursuant to her legal obligation to care for her husband, rather than by the husband; nor were they recoverable by the husband's heirs under section 377 of the Code of Civil Procedure, the wrongful death statute, for such expenses were not sustained by reason of the death of the husband. It was therefore concluded that plaintiff wife had sustained the expenses in her own right pursuant to her legal obligations to her husband and "as an individual," she was entitled to recover them from the defendants as the persons whose negligence proximately caused the injuries necessitating the medical services and expenses.

Plaintiff argues that its position is similar to the wife's in the Follansbee case: it was under a legal duty, pursuant to its life-care contract, to provide the medical care for Ross necessitated by defendants' negligent conduct; the medical expenses so incurred were neither recoverable by Ross' estate (Civ. Code, § 956) nor by his heirs under the wrongful death statute (Code Civ. Proc., § 377); and therefore defendants' negligent act was a tort against plaintiff as well as against Ross, the physically injured person.

Plaintiff's alleged direct right of recovery depends upon its contractual obligation to decedent. ▮ The courts in common-law jurisdictions have long recognized that an action will lie for the intentional interference by a third person with a contractual relation either by unlawful means or by means otherwise lawful in the absence of sufficient justification. (*Im-*

*perial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631] ; see Prosser on Torts, 2d ed., pp. 722-725, where the development of this rule is traced.) The most general application of this rule is to cases where one party to the contract has been induced to breach it, but it has been extended to cases where performance has been rendered more expensive or burdensome by the third party's intentional act. (Prosser on Torts, 2d ed., p. 730, and cases cited in note 92.) However, with the exception of an action by the master for tortious injuries to his servant, thus depriving the master of his servant's services, which traces back to medieval English law (Prosser on Torts, 2d ed., pp. 723, 729, 732; see Civ. Code, § 49, subd. (c), codifying this common-law rule; *cf. Earley* v. *Pacific Electric Ry. Co.,* 176 Cal. 79, 82 [167 P. 513, L.R.A. 1918A 997] ; *Darmour Productions Corp.* v. *H. M. Baruch Corp.,* 135 Cal.App. 351, 352-353 [27 P.2d 664]), the courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome. (Prosser on Torts, 2d ed., pp. 732-733, collecting many of the cases; Harper and James, vol. 1, The Law of Torts, § 6.10, pp. 501-510; note 23 Cal.L.Rev. p. 420.)

In a comparatively recent opinion (1946) the Court of Appeals of Ohio in *Stevenson* v. *East Ohio Gas Co.,* (Ohio App.) 73 N.E.2d 200, refused recovery to a workman who claimed to have lost eight days wages under his contract with his employer because of conditions caused by a negligent gas explosion in defendant's plant. The court, after noting that plaintiff had failed to find a single case supporting such a cause of action, and after citing and discussing many of the cases in which recovery for negligent interference with contract had been denied, concluded at page 204 : "It is our opinion that the courts generally have reached a wise result in limiting claims for damages in this class of cases to who (*sic*) may have sustained personal injuries or physical property damage and in refusing to open their doors in such cases to claims of loss of wages and other economic loss based on contract." (*Cf. Standard Oil Co.* v. *United States* (1946), 153 F.2d 958, 960.)

 No case has been cited to us which would support plaintiff's contention that, because under its contract with the decedent plaintiff was compelled to expend sums for his medical care and treatment by reason of the injuries negligently inflicted upon decedent, plaintiff has a direct cause of

action against defendants based upon such negligent injuries, and we are satisfied that to so hold would constitute an unwarranted extension of liability for negligence.

The analogy which plaintiff attempts to draw between this case and *Follansbee* v. *Benzenberg, supra,* 122 Cal.App.2d 466, must fail because the wife's recovery in Follansbee depended upon familial status and the duty of support of her husband imposed upon her by statutory law (Civ. Code, §§ 171, 176) while plaintiff's claim for recovery is based solely upon a contractual liability between itself and the decedent. A similar attempted analogy between the obligation imposed by familial status and a strictly contractual obligation was made in *Anthony* v. *Slaid,* 52 Mass. (11 Metc.) 290. In that case the plaintiff had a contract to support all the poor of a town and was compelled by defendant's injury to one of the paupers to expend under his contract an increased amount for the pauper's care. His right to recover from the tortfeasor was denied, the court saying at page 291: "It is not by means of any natural or legal relation between the plaintiff and the party injured, that the plaintiff sustains any loss by the act of the defendant's wife, but by means of the special contract by which he had undertaken to support the town paupers. The damage is too remote and indirect." (*Cf. Dennis* v. *Clark,* 56 Mass. (2 Cush.) 347, 354 [48 Am.Dec. 671].)

Nor is it true, as plaintiff argues, that because it paid for the medical care and treatment under its contract, the decedent's estate has no cause of action for the cost of such treatment against the defendants. ▌ The fact that either under contract or gratuitously such treatment has been paid for by another does not defeat the cause of action of the injured party to recover the reasonable value of such treatment from the tortfeasor. (*Purcell* v. *Goldberg,* 34 Cal.App.2d 344, 350 [93 P.2d 578]; *Reichle* v. *Hazie,* 22 Cal.App.2d 543, 547 [71 P.2d 849]; *cf. Gastine* v. *Ewing,* 65 Cal.App.2d 131, 143-144 [150 P.2d 266]; *Bencich* v. *Market St. Ry. Co.,* 29 Cal.App.2d 641, 647 [85 P.2d 556]; *Loggie* v. *Interstate Transit Co.,* 108 Cal.App. 165, 169 [291 P. 618].)

2. *Plaintiff's right on the theory of subrogation.*

Plaintiff has pleaded in paragraph 9 of its complaint: "The life-care contract between plaintiff and GEORGE A. Ross expressly assigned to the plaintiff corporation a right of subrogation for all expenses incurred by the corporation as the result of any injuries inflicted upon said GEORGE A. Ross by reason of the negligence or carelessness of any third party."

■ Subrogation is of two sorts: "legal" and "conventional." Legal subrogation has its source in equity and arises by operation of law. (83 C.J.S., Subrogation, § 3, pp. 583-584.) Conventional subrogation arises by act of the parties and rests on contract. (83 C.J.S., Subrogation, § 4, p. 586.) Although plaintiff has attempted to plead a conventional subrogation, it argues that it is entitled to a legal subrogation as well.

Defendants argue that subrogation of either type operates as an equitable assignment and is forbidden under the express terms of Civil Code, section 956:[1] "Nothing in this article shall be construed as making such a thing in action assignable."

To furnish a proper background for the arguments of the parties on this phase of the case, it seems desirable to sketch briefly the rules respecting the assignability of choses in action for tort and the judicial history which led to the adoption of Civil Code, section 956, with its express provision that the right of action therein provided for shall not be subject to assignment. Historically at common law the assignability of causes of action sounding in tort depended upon survivability. So causes of action for damage to property, since they survived the death of the parties, were assignable and causes of action for injury to the person, since they did not survive, were not assignable. (5 Cal.Jur.2d, Assignments, § 7, pp. 274-276; 6 C.J.S., Assignments, §§ 32-34, pp. 1080-1084.) Prior to the decision of this court in *Hunt* v. *Authier,* 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379], the rule had been settled that no cause of action for damage which arose from tortious injury to the person survived (*Norton* v. *City of Pomona,* 5 Cal.2d 54, 62 [53 P.2d 952]) and as a corollary, no such cause of action was assignable. In *Hunt* v. *Authier, supra,* this court, while reaffirming the general rule with regard to injuries to the person, held that under Probate Code, section 574, then in force, the cause of action for injury to the estate of the person, which resulted from the injury to his person,

---

[1] "A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action. When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering or disfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death. The damages recovered shall form part of the estate of the deceased. Nothing in this article shall be construed as making such a thing in action assignable."

did survive. *Hunt* v. *Authier* was decided in 1946. In 1949 the Legislature adopted Civil Code, section 956, and in doing so, expressly provided against the assignability of the causes of action therein specified. By adopting this reservation against assignability, the Legislature placed the law as regards the causes of action therein provided for in the same position as all other causes of action arising from tortious injury to the person. We may therefore consider the question here presented to us as posing the problem whether a third party may be subrogated either by the operation of equitable principles (legal subrogation) or by contract with the injured party (conventional subrogation) to any part of a cause of action for injury to the person in view of the fact that under our law no such cause of action may be assigned.

This statement is found in the Restatement of Restitution, section 162, comment h: ''Where a person has discharged the obligation of another, his right to subrogation is somewhat similar to but somewhat different from the right of an assignee of the obligation. Like an assignee he can enforce against the obligor the rights which the obligee had against the obligor. But, although an assignee can ordinarily enforce the obligation only by a proceeding at law, a person entitled to subrogation ordinarily enforces his rights in equity. So also, a person who discharges the obligation of another officiously is not entitled to subrogation, whereas a person who has obtained an assignment from the obligee can enforce the obligation without regard to any question of his officiousness. On the other hand, a person discharging an obligation may be entitled to subrogation even though the obligation was such that it was not assignable.''

No example is given in the Restatement of an instance of subrogation to a nonassignable obligation, nor is the last quoted cryptic sentence further elaborated or explained in any way. Plaintiff has not cited to us any case in the California courts where a right of subrogation to a cause of action for tortious injury to the person has been recognized, except in cases where such right of subrogation has been expressly granted by statute. The Legislature where it has desired to give a right of subrogation in such cases, has done so in express language: *e.g.*, Labor Code, section 3852, subrogating the employer who has paid workmen's compensation to a cause of action against a tortfeasor responsible for the employee's injuries (by definition this includes the employer's insurer, Lab. Code, § 3850) ; Vehicle Code, section 17153, subrogating

the owner who is held liable for tortious injuries caused by a person operating his automobile with his consent to the rights of the injured person against the operator; Government Code, section 21451, giving the State Retirement System a cause of action against a person causing a member's injury or death, to recover the actuarial equivalent of the benefits for which the system is liable because of such injury or death; Government Code, section 31820, giving a similar right to a County Employees' Retirement System.

While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such causes of action by subrogation. This court said in *Offer* v. *Superior Court*, 194 Cal. 114, 121 [228 P. 11], in upholding a right of subrogation in a case of damage to property: "Section 954 of the Civil Code provides that 'A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.' It is clear that in the case at bar the cause of action of the insured arose out of the violation of a right of property and such right of action, or thing in action, is declared by the above code section to be assignable. In *Dibble* v. *San Joaquin L. & P. Corp.*, 47 Cal. App. 112, 117 [190 P. 198], the court held that the insurer merely had a cause of action arising by way of subrogation or equitable assignment which is declared to be an assignment by operation of law. If the right of the insured is assigned to the insurer by operation of law there is no necessity to go into equity to establish that right."

Conversely in the earlier development of the law, assignment was regarded as one form of subrogation. (*Branham* v. *Mayor & Common Council of San Jose*, 24 Cal. 585, 607.)

Whether the transfer be technically called assignment or subrogation or equitable assignment or assignment by operation of law its ultimate effect is the same, to pass the title to a cause of action from one person to another.

Two companion cases from Michigan have been cited to us which seem nearly in point to the question here presented: *Michigan Hospital Service* v. *Sharpe*, 339 Mich. 357 [63 N.W. 2d 638, 43 A.L.R.2d 1167] and *Michigan Medical Service* v. *Sharpe*, 339 Mich. 574 [64 N.W.2d 713]. In the first (63 N.W. 2d 638), the plaintiff under a contract to furnish hospital service to Sharpe sought to recover, under the theory of legal

subrogation, sums paid out by it for Sharpe's care by reason of personal injuries tortiously inflicted on Sharpe by one Manning. The contract contained no provision for subrogation. The complaint was dismissed on the ground that plaintiff, not being an insurance company, could not take advantage of a statute permitting an insurance company to be so subrogated, and that in the absence of statute it was not entitled to subrogation. In the second case (64 N.W.2d 713), the contract did have a subrogation clause. The court held that the plaintiff under the subrogation clause was entitled to recourse against its member Sharpe to recover a portion of his recovery from the tortfeasor. The court held, however, that plaintiff had no direct cause of action against the tortfeasor, saying, 64 N.W.2d at page 714: "Liability cannot be cast on him by a contract to which he was not a party." See *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.*, 170 Cal.App.2d 412, 423 [339 P.2d 225]; *Standard Oil Co.* v. *United States, supra,* 153 F.2d 958; *Crab Orchard Imp. Co.* v. *Chesapeake & O. Ry. Co.*, 115 F.2d 277; *McCullough* v. *John B. Varick Co.*, 90 N. H. 409 [10 A.2d 245]; 34 Ops. Cal. Atty. Gen. 247, 257.

Plaintiff attempts to distinguish the Michigan cases on the ground that the Medical Service "apparently . . . did not assume direct responsibility for the patient's medical care but only reimbursed him for expenses incurred by him." The distinction would not seem to affect the question whether, in the absence of statute, there can be a right of subrogation to a nonassignable cause of action. In any event the Michigan court treated the contract as creating a direct liability to furnish the services. In the first Michigan case, the court said (63 N.W.2d p. 641): "Plaintiff thus had a primary obligation to provide service in accordance with the terms of the contract."

Plaintiff attempts an analogy to an attorney's contingent fee contract in personal injury cases. ▮▮ Such contracts do not operate to transfer a part of the cause of action to the attorney but only give him a lien upon his client's recovery. (*Bartlett* v. *Pacific Nat. Bank,* 110 Cal.App.2d 683, 689 [244 P.2d 91].) Only if Ross' personal representative had recovered a judgment against defendants and plaintiff was seeking to impose a lien thereon would the cases be analogous. That was exactly what the court did in the second Michigan case (64 N.W.2d 713).

*Montgomery Ward & Co.* v. *Furlong,* 219 F.2d 726, cited

by plaintiff, allowed recovery by the United States against the tortfeasor for hospital services furnished its injured employee by the Government. The recovery was based upon an express assignment made after the services were furnished, and unless some act of Congress authorized this procedure, which does not appear from the opinion of the court, the holding is contrary to our rule that such causes of action are nonassignable. Cases such as *Higley* v. *Schlessman*, —— Okla. —— [292 P.2d 411], and *Pacific Employers Ins. Co.* v. *Industrial Acc. Com. of California et al.*, 23 Calif. Comp. Cas. 146; 24 *Id.* 38; cert. den. by United States Supreme Court, 359 U.S. 911 [79 S.Ct. 588, 3 L.Ed.2d 575], also cited by plaintiff, depended on a statutory lien for medical and hospital services furnished an injured employee entitled to workmen's compensation.

In *United States* v. *Aetna Casualty & Surety Co.*, 338 U.S. 366 [70 S.Ct. 207, 94 L.Ed. 171, 12 A.L.R.2d 444], the United States Supreme Court held that the act of Congress (R.S. 3477), which prohibits the assignment of claims against the United States, does not bar transfers by operation of law and hence does not bar subrogation by operation of law. The court followed "interpretation . . . for nearly a century" that "involuntary assignment was not thought to be an evil within the scope of a statute aimed at fraud and harassment." (338 U.S. 376.) The court considered the history of the legislation permitting the government to be sued for tort (pp. 376-380) and concluded that Congress had not intended to bar suits by subrogees in enacting the Tort Claims Act. This decision, construing the purpose and effect of congressional action in limiting the assignment of claims against the United States, has no particular relevancy to the problem which we are considering, since we must conclude that in enacting Civil Code, section 956, the Legislature intended that the established rule against assignability of claims based upon injuries to the person should apply to the claims therein enumerated.

We should perhaps notice, although not cited by the parties, *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]. In that case we held that an employer's insurer who had paid a judgment against the employer for injuries caused by the unauthorized negligent act of his employee was subrogated to the employer's cause of action for recoupment against the employee or the employee's insurer. (46 Cal.2d 429.) The employer's cause of action against the employee in such circumstances is based upon the breach of the servant's duty to his master and is one

for indemnification (*Bradley* v. *Rosenthal*, 154 Cal. 420, 424 [97 P. 875, 129 Am.St.Rep. 171]; 27 Am.Jur., Indemnity, § 19, p. 468; *cf. City & County of San Francisco* v. *Ho Sing*, 51 Cal.2d 127 [330 P.2d 802]), and the holding in Continental Casualty does not impinge in any way upon the question now before us.

We are satisfied that the principles of subrogation should not be here applied in view of the express reservation against assignment in Civil Code, section 956.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.