[Civ. No. 31949.   Second Dist., Div. Five.   Oct. 30, 1968.]

DALE LEE, Plaintiff and Appellant, v. A. E. JOSEPH, Defendant and Respondent.

Eugene P. Taylor for Plaintiff and Appellant.

Harold Rubins for Defendant and Respondent.

STEPHENS, J.—On January 22, 1965, Economic Services Inc., d.b.a. Walker Oil Co., executed and delivered to the plaintiff a promissory note for $2,000 secured by a deed of trust on certain property. The deed of trust was properly recorded. At the time of the issuance of this note and deed of trust, this property was subject to three prior deeds of trust, an attachment lien, and a claim based on an abstracted judgment. The second trust deed on the property secured a note executed to the defendant, and he was beneficiary of the deed of trust. On October 5, 1964, a notice of default had been recorded on this second deed of trust, and a trustee's sale had been set for January 27, 1965. There had been offers from Mr. William Walker and the plaintiff on behalf of Walker to reinstate the note and trust deed, but these had been refused by the defendant.[1] These offers had preceded the issuance of the note to the plaintiff. After the issuance of the note to the plaintiff, the plaintiff, on January 23, 1965, offered to pay off

[1] Walker's three months' reinstatement period had then expired. (Civ. Code, § 2924c.)

the note to the defendant and requested that the defendant's rights under the deed of trust be transferred to him.[2] The defendant refused. On Monday morning, January 25, 1965, the plaintiff appeared at the office of the First Western Bank, the trustee on defendant's deed of trust, and tendered the amount due on the note, requesting an assignment of defendant's rights under the deed of trust. The bank refused to transfer the rights to the plaintiff, but did agree that upon payment it would cancel the note and reconvey the deed of trust to the grantor. The plaintiff refused this offer. After this refusal, the plaintiff brought an action to compel subrogation to the rights of the defendant, and to enjoin the sale of the property at the scheduled trustee's sale. A temporary restraining order was issued and a lis pendens filed. Subsequently, the restraining order was dissolved, the lis pendens was ordered off record, and the sale proceeded on February 24, 1965. The defendant bought the property at the sale. Thereafter the plaintiff brought a second suit for the imposition of an involuntary trust on the property; a lis pendens filed in connection with this suit still remains of record.

These two actions were consolidated for trial. At the trial, over a continuing objection by the plaintiff, the trial court allowed testimony which indicated that the note and deed of trust issued to the plaintiff were not given for adequate consideration. Without going into the evidence in detail, suffice it to say that the testimony indicated, and the trial judge so found, that the plaintiff was in fact acting in a representative capacity for the trustor (plaintiff is an attorney); that there was no consideration given for the note; and that the money tendered to pay the note to the defendant was actually the money of Mr. Walker. The plaintiff appeals from the judgment rendered in favor of defendant in both actions.

■■■ We find there was substantial evidence to support a conclusion that the note was not issued for adequate consideration, and the plaintiff was not a bona fide junior lienholder.[3]

---

[2] There was conflicting testimony as to whether the tender was conditional on an "assignment" or only "subrogation." The trial court determined the conflict by its finding 14: "The Court finds that no offer of payment of the note of defendant was ever made to defendant by anyone except on condition that the defendant assign his said promissory note and deed of trust."

[3] Under rule 12(a), the record on appeal was augmented by inclusion of the superior court file, which contains a Memorandum and Order for Judgment in which the trial judge said (and his findings carried forth his declarations):

"We are concerned here with a Second Deed of Trust securing a Note

The trial court found for the defendant in each action, trial by jury having been waived.

The contentions of plaintiff on this appeal are that: ''I. A Junior lienholder has the right of redemption from a senior

to Mr. A. E. Joseph. The claim asserted by Mr. Dale Lee under his Note and Deed of Trust as pleaded is far down the list. The evidence is that there are a number of creditors' lien rights intervening between the Second Trust Deed and that under which Mr. Lee claims.

''If the plaintiff has a bonafide Note and Deed of Trust there is no doubt that he is entitled to the relief sought. The Court has concluded that the rights he asserts, if any, are not bonafide.

''The evidence is clear that after the obligation due Mr. A. E. Joseph was in default, the debtor attempted to have the loan reinstated. It was not reinstated due to bad performance of the obligation under the Note and Deed of Trust. So far as the evidence here indicates, Mr. Walker, the Walker Oil Co., and Economic Services, Inc. are one and the same.

''We are convinced that Mr. Walker having been turned down upon his application for reinstatement devised the scheme of giving the Note and Trust Deed to Lee, his attorney, who in his own name and without disclosing his principal did attempt to secure the subrogation sought while at any time Walker could have paid and discharged the obligation of the Note and Trust Deed held by Mr. A. E. Joseph. The testimony is clear that he refused to do this. He did not bid in at the foreclosure sale; he still had the right of redemption following the sale.

''Purpose and design is, therefore, evident. The acquisition of the Trust Deed and Note by way of assignment would enable foreclosure to be made by Lee wiping out all of the subordinate creditors of Walker and his enterprise who claim liens against the property. It is intimated that Mr. A. E. Joseph and his counsel realized that such a procedure by Walker acting through a dummy might be in fraud of creditors. . . . They refused to do anything that was not strictly called for by the Deed of Trust, namely, reconveyance of the property and cancellation of the note upon payment. The uncontradicted evidence that an offer was made to pay a bonus of $2,000.00 'under the table' gives a key to the character of the transaction with which we are now concerned.

''Mr. Lee asks us to believe that the $2,000.00 Note secured by the Trust Deed here involved was tendered him both for services to Mr. Walker and for his agreement not to press the judgment which he had secured for Brinks. There is no evidence that this arrangement was officially made by him on behalf of Brinks. It permits us to infer it was a contract by which he was to receive $2,000.00 'under the table' to defer action which otherwise he was bound to take on behalf of his client, Brinks. Either this arrangement never existed—in which case Lee's testimony is untrue—or, if true, it existed in contravention of his duty to Brinks, so far as the evidence indicates. When a Court scrutinizes such a contract made by an attorney in reference to his duties, it should not hesitate to strike it down as being void and in contravention of good public policy. To be given $2,000.00 to secure slight delay in collection of a $2,080.00 judgment is inherently improbable.

''The testimony that the $2,000.00 Note also was in recognition of services by Lee to Walker, and following the assertions relative thereto, is like chasing a rat through a pile of rocks. The nature and character of such services is most sketchy. Again, a problem of credibility arises and we do not believe the testimony. No attorney, as alert as Mr. Lee showed himself to be upon the witness stand, would ever have been so imprecise in regard to his services or his basis for compensation.

''Even if a bare legal right may appear to have been established by presumptions, this Court asked for an equitable remedy must do equity

lienholder, at any time after the claim is due, and before foreclosure of his right of redemption, and becomes thereby subrogated to all the benefits of the senior lien''; ''II. The trial court erred in permitting an attack upon the status of Plaintiff as lienholder junior to the Defendant''; ''III. The trial court erred to the prejudice of the Plaintiff by failing to rule on the continuing objections and motions to strike made by the Plaintiff to the introduction of evidence which constituted a collateral attack on the position of Plaintiff as a junior lienholder.''

The crux of each of the three contentions is that the defendant does not have available the defense that plaintiff was not in fact a holder of a bona fide junior lien.

The right of redemption of a junior lienor is provided by sections 2903, 2904 and 2905 of the Civil Code.[4] It was the finding of the trial court that the whole scheme was to create a sham lien. It is axiomatic that a purported obligation unsupported by consideration is no obligation at all and constitutes but a sham obligation. (2 Jones, Mortgages, § 1363, p. 835.) The purported lien of plaintiff, if but one in behalf of

---

as well, and will not permit its processes to be used as an instrument of fraud.

''The evidence is uncontradicted that the First Trust Deed held by Seaside Oil Company and paramount to the Second Trust Deed held by Mr. Joseph likewise was in default. Mr. Joseph made arrangements to reinstate the First Trust Deed or else the Second would have been wiped out carrying with it any rights which the Lee Trust Deed purported to maintain.

''In an action such as this to compel specific performance by way of assignment of the Second Trust Deed, the plaintiff would have had to do equity extending to the obligations assumed by Mr. Joseph under the First. This has not been done.''

[4]Civil Code section 2903:

''Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed, and, by such redemption, becomes subrogated to all the benefits of the lien, as against all owners of other interests in the property, except in so far as he was bound to make such redemption for their benefit.''

Civil Code section 2904:

''One who has a lien inferior to another, upon the same property, has a right:

''1. To redeem the property in the same manner as its owner might, from the superior lien; and,

''2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby.''

Civil Code section 2905:

''Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay.''

the owner, was no lien at all, for likewise it is axiomatic that the owner of a piece of property cannot have a lien upon it.

It appears that the scheme was one intended to squeeze out intermediate junior lienholders. There was evidence that the money tendered by Lee was in fact Walker's,[5] and the reasonable inference is that Walker's interest was not solely to redeem, for he could have done so after the sale. Subrogation is a creature of equity. (*Fifield Manor* v. *Finston,* 54 Cal.2d 632, 638 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Meyers* v. *Bank of America etc. Assn.,* 11 Cal.2d 92, 94-96 [77 P.2d 1084].) We hold that a holder of a senior lien has the defense available to him of the lack of bona fides of a purported junior lienholder seeking redemption under sections 2903, 2904, and 2905 of the Civil Code.

▉ We note also that the finding of the trial court (No. 14)[6] effectively found that the offer by Lee was not an effective tender. In *Martin* v. *Hildebrand* (1920) 183 Cal. 270, 271-272 [191 P. 676], it was held that an offer of the amount due a mortgagee coupled with a demand of "an assignment of said note and mortgage" was not a tender discharging a mortgage or barring its foreclosure. The court stated (p. 272) : "It was an offer to purchase the note and mortgage, not an offer to pay or discharge the mortgage debt. Such an offer does not operate either to extinguish the obligation for the debt or to terminate the lien of the mortgage."

The judgment is affirmed.

Kaus, P. J., and Aiso, J. pro tem.,* concurred.

---

[5]Lee specifically testified he had not even an equitable interest in the tendered monies.

[6]See footnote 2, page 32.

*Assigned by the Chairman of the Judicial Council.