41 Cal.Rptr.3d 857 (2006)
138 Cal.App.4th 883
Morgan Robert SMOCK, Plaintiff and Respondent,
v.
STATE of California, Defendant and Appellant.
Nos. A107532, A108413.
Court of Appeal, First District, Division Three.
April 18, 2006.
Bruce A. Behrens, Chief Counsel, David Gossage, Deputy Chief Counsel, Karl H. Schmidt, Assistant Chief Counsel, Janet Y. Wong, for Appellant.
Joseph A. Hearst, Douglas S. Saeltzer, Walkup, Melodia, Kelly & Echeverria, San Francisco, for Respondent.
SIGGINS, J.
The State of California appeals from a jury verdict in favor of Morgan Robert Smock in his personal injury suit. The State contends the trial court erred when it applied the collateral source rule to exclude from the jury's consideration certain payments Smock received from his employer *858 during his convalescence. The State also argues that it was error to award costs jointly and severally. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In September 2001, Smock was seriously injured in a traffic accident on the westbound approach to the San Francisco-Oakland Bay Bridge.[1] He filed a complaint alleging his injuries were due to the negligence of another driver and a dangerous condition of State property. The jury found for Smock and apportioned liability 10 percent to the State and 90 percent to the other driver. Total damages awarded to Smock included past and future medical expenses, past lost earnings, and past and future non-economic damages.[2]
Smock is a lawyer who, at the time of the accident, had recently become a partner in a law firm. As a result of his injuries, Smock did not work the hours he agreed to bill for his services in 2001 and 2002. Nevertheless, the law firm paid his agreed salary and bonus without any reduction. On Smock's motion, the trial court applied the collateral source rule and excluded evidence of those payments by his employer from the jury's consideration.[3] After hearing evidence that Smock worked reduced hours, the jury awarded him $108,000 in lost earnings.[4]
Following trial the State moved to tax costs. The court granted the State's motion, but declined to limit the State's responsibility for costs in proportion to its percentage of fault reflected in the judgment. The State timely appealed.[5]

DISCUSSION
This case presents another challenge to the application of the collateral source rule to exclude from evidence and the computation of damages the payments a plaintiff receives from a source independent of the wrongdoer. Though oft-maligned, a form of the rule has been a part of our jurisprudence since California's earliest days in the union. (See Martin White v. Mary Ann (1856) 6 Cal. 462, 470-471, 1856 WL 843.) The rule derives its earliest articulation in cases of equity and admiralty, where a wrongdoer was held to be responsible for injury irrespective of whether anyone else provided protection or indemnity to the victim. "The respondent is not presumed to know, or bound to inquire, as to the relative equities of parties claiming the damages. He is bound to make satisfaction for the injury he has done." (The Propeller Monticello v. Mollison (1854) 58 U.S. 152, 154-155, 17 How. 152, 15 L.Ed. 68.)
*859 In its most modern articulation, the rule provides "that if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. [Citation.]" (Helfend v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d 1, 6, 84 Cal.Rptr. 173, 465 P.2d 61 (Helfend); accord, Lund v. San Joaquin Valley Railroad (2003) 31 Cal.4th 1, 9, 1 Cal.Rptr.3d 412, 71 P.3d 770; Hrnjak v. Graymar, Inc. (1971) 4 Cal.3d 725, 729-730, 94 Cal.Rptr. 623, 484 P.2d 599.) While commonly applied to exclude evidence of insurance payments, over the years, a variety of benefits provided to plaintiffs have been held to be collateral sources of compensation that should not be considered in mitigation of a plaintiff's damages. (See Helfend, supra, at p. 14, 84 Cal.Rptr. 173, 465 P.2d 61 [medical insurance benefits]; McKinney v. California Portland Cement Co. (2002) 96 Cal. App.4th 1214, 1220, 117 Cal.Rptr.2d 849 [social security and pension]; Pacific Gas & Electric Co. v. Superior Court (1994) 28 Cal.App.4th 174, 176-177, 33 Cal.Rptr.2d 522 [fidelity bond proceeds]; Fifield Manor v. Finston (1960) 54 Cal.2d 632, 637, 7 Cal.Rptr. 377, 354 P.2d 1073 [value of gratuitous medical services]; Hanif v. Housing Authority (1988) 200 Cal.App.3d 635, 644, 246 Cal.Rptr. 192 [value of home care provided by a child's parents]; Rodriguez v. McDonnell Douglas Corp. (1978) 87 Cal. App.3d 626, 662, 151 Cal.Rptr. 399 [value of nursing services provided by a spouse]; Tremeroli v. Austin Trailer Equip. Co. (1951) 102 Cal.App.2d 464, 482, 227 P.2d 923 [wages paid by an employer]; Arambula v. Wells (1999) 72 Cal.App.4th 1006, 1008, 85 Cal.Rptr.2d 584 [wages paid by an employer].)
While the collateral source rule has persistently been criticized as leading to a windfall or double recovery for a plaintiff (Helfend, supra, 2 Cal.3d at p. 10, 84 Cal. Rptr. 173, 465 P.2d 61), there are various policy justifications that support its vitality. Like in the earliest cases, it does not provide double recovery in situations where the payor has a right of subrogation or reimbursement. (Id. at pp. 10-11, 84 Cal.Rptr. 173, 465 P.2d 61.) In situations where the victim's insurance provides compensation, the rule is said to serve a public policy of encouraging people to purchase and maintain insurance. (Id. at p. 10, 84 Cal.Rptr. 173, 465 P.2d 61.) Moreover, in those circumstances, it is thought a defendant should not be able to introduce evidence of the insurance payment and thereby benefit from the victim's prescience to buy insurance in the first place. (Ibid.)
The collateral source rule is also considered to play a necessary role in the complex and delicate calculations of damages. For example, the cost of medical care is often an important indicator of a plaintiff's general damages (Helfend, supra, 2 Cal.3d at p. 11, 84 Cal.Rptr. 173, 465 P.2d 61) and, because juries are not told a plaintiff's attorney may receive a contingent fee out of any recovery, the rule partially serves to compensate the attorney's share. In these circumstances, the application of the rule is not considered to lead to a double recovery, but rather to a "closer approximation to full compensation." (Id. at pp. 12-13, 84 Cal.Rptr. 173, 465 P.2d 61.)
The cases that discuss application of the collateral source rule do not find a critical distinction between situations where the victim receives a gratuitous payment or benefit and those where the benefit or payment arises from some obligation. Under California law, it makes no difference. (See Helfend, supra, 2 Cal.3d at pp. 11-13, 84 Cal.Rptr. 173, 465 P.2d 61; Fifield Manor v. Finston, supra, 54 Cal.2d at p. 637, 7 Cal.Rptr. 377, 354 P.2d 1073; Rotolo *860 Chevrolet v. Superior Court (2003) 105 Cal. App.4th 242, 245-246, 129 Cal.Rptr.2d 283; McKinney v. California Portland Cement Co., supra, 96 Cal.App.4th at p. 1222, 117 Cal.Rptr.2d 849; Arambula v. Wells, supra, 72 Cal.App.4th at p. 1011, 85 Cal. Rptr.2d 584; Pacific Gas & Electric Co. v. Superior Court, supra, 28 Cal.App.4th at p. 180, 33 Cal.Rptr.2d 522; Hanif v. Housing Authority, supra, 200 Cal.App.3d at p. 644, 246 Cal.Rptr. 192; Philip Chang & Sons Associates v. La Casa Novato (1986) 177 Cal.App.3d 159, 169-170, 222 Cal.Rptr. 800; Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at p. 662, 151 Cal.Rptr. 399; Tremeroli v. Austin Trailer Equip. Co., supra, 102 Cal.App.2d at p. 482, 227 P.2d 923.) At least one commentator has observed that in situations where the victim receives a gratuitous benefit, application of the rule serves a public policy of encouraging third parties to help victims of wrongdoing. (Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2005)[¶] 3:52.2, p. 3-62.5.)
In the end, while barring the collateral source from consideration may confer a benefit on the victim, allowing it to be considered would benefit the wrongdoer. So, courts choose in such cases to benefit the victim. (Arambula v. Wells, supra, 72 Cal.App.4th at p. 1014, 85 Cal.Rptr.2d 584; Philip Chang & Sons Associates v. La Casa Novato, supra, 177 Cal.App.3d at p. 170, 222 Cal.Rptr. 800.) Application of the rule is not considered punitive, and it applies equally to private and government tortfeasors. (Helfend, supra, 2 Cal.3d at p. 16, 84 Cal.Rptr. 173, 465 P.2d 61.)
In fact, in cases involving public entities, the Legislature has enacted certain conditions on the application of the collateral source rule. Government Code section 985 allows a reduction of the judgment against a public entity for amounts already received by a plaintiff from certain public funds and insurance sources. The State pursued its rights under section 985 with regard to certain payments by Smock's medical insurance, and the trial court reduced the damages owed by the State. Civil Code section 3333.1 also provides a limited exemption from the collateral source rule in actions against a health care provider based on professional negligence. If other modifications or limitations to this long-established rule are warranted, their creation is best left to the Legislature. (See Helfend, supra, 2 Cal.3d at p. 13, 84 Cal.Rptr. 173, 465 P.2d 61 ["the proposed changes, if desirable, would be more effectively accomplished through legislative reform."].)
Against this legal backdrop, the State contends the collateral source rule should not apply here because its policy justifications are not fulfilled when the rule is applied to exclude gratuitous payments made to a victim. But that is not the law. However criticized, maligned or debatable the application of the collateral source rule may be in this case, it is not within our province to depart from established California law and we decline to do so.
Finally, the State contends the cost award should be allocated between the defendants based on their respective proportion of fault, but the State cites no authority to support such a division.[6] The right *861 to recover costs under California law is governed by statute. (Ladas v. California State Auto. Assn. (1993) 19 Cal.App.4th 761, 774, 23 Cal.Rptr.2d 810.) Code of Civil Procedure section 1032, subdivision (b), provides that costs are to be awarded to a prevailing party as a matter of right. Apportionment of costs is authorized, at the court's discretion, only under those comparatively unusual circumstances when the court must determine which party prevailed. (Code Civ. Proc., § 1032, subd. (a)(4).) Smock clearly prevailed below, and the State has cited no authority that would permit, much less compel, the trial court to apportion costs under these circumstances. (See Nelson v. Anderson (1999) 72 Cal.App.4th 111, 129, 84 Cal. Rptr.2d 753 ["the prevailing party is entitled to all of his costs unless another statute provides otherwise"].)

DISPOSITION
The judgment and orders of the trial court are affirmed.
We concur: McGUINESS, P.J., and POLLAK, J.
NOTES
[1] Smock, who was riding a motorcycle, collided with a car whose driver had changed lanes through a row of "channelizers" into Smock's path. Smock was flung onto the roadway and broke his right leg and foot.
[2] The defendants below were held jointly and severally liable for the economic damages.
[3] In excluding evidence regarding the law firm's payments to Smock, the trial court commented "Whatever [the reason for the payments], it appears that during the time that the plaintiff was unable to work, or was affected by this, he was compensated. To me that seems a lot like a disability policy.... [¶] And so I think that the collateral source rule is particularly relevant and appropriate here."
[4] Smock calculated he had lost 1,051 hours of work while recovering after the accident. His average hourly wage was approximately $103.
[5] The State appeals in A107532 from a final judgment entered June 3, 2004. The court's posttrial rulings were subsequently incorporated into an amended judgment, from which the State filed a second appeal in A108413. The appeals were consolidated by this court's order of December 23, 2004.
[6] In denying the State's request to apportion costs below, the trial court noted the State had provided no statutory or case authority to support that argument. The court further observed that in view of the other defendant's insolvency, the practical effect of such an apportionment would be to deny costs to Smock, the prevailing party. It concluded: "In the exercise of the court's discretion the court will not apportion the costs between the Defendants."